Kathy and Wayne FRANKLIN, Individually and as Legal Guardians of Craig and Eric Franklin, Minors, Plaintiffs,

v.

Margaret FRID, Eve Dalton, Thomas Cutler, James McQueen, Kevin D. Magin, Jon McCarthy, jointly and severally, in their personal and professional capacities, and Muskegon Board of Education, a Michigan educational corporation, Defendants.

No. 1:97–CV–80.

United States District Court,
W.D. Michigan,
Southern Division.

Jan. 23, 1998.

Regina A. Brice, Kentwood, MI, for Plaintiffs.

William Vogelzang, Jr., Robert Francis Mirque, Jr., Kluczynski, Girtz & Vogelzang, Grand Rapids, MI, Gary T. Britton, Britton & Bossenbroek, PC, Muskegon, MI, for Defendants.

## OPINION

QUIST, District Judge.

In this civil rights action, Plaintiffs Kathy and Wayne Franklin (the "Franklins"), on their own behalf and as legal guardians of Craig ("Craig") and Eric ("Eric") Franklin, allege that Defendants deprived Craig of his right to a free and appropriate public education pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1485 (the "IDEA"). The Franklins have alleged claims against Defendants for deprivation of their federal civil rights under 42 U.S.C. §§ 1983, 1985, and 1986, violation of their rights under the Michigan Constitution, violation of the Michigan Handicappers' Civil

Rights Act, M.C.L. §§ 37.1101–37.1607, and state law torts of assault and battery. Now before the Court is Defendants' motion for summary judgment.

### Facts

Craig Franklin is a handicapped minor child who suffers from cerebral palsy. Craig and his brother, Eric, began attending Holton Middle School in the Holton Public School District ("Holton") at the start of the 1995–96 school year. At that time, Craig received an Individualized Educational Program ("IEP") in which he attended regular classes with other students and received personal tutoring and assistance.

Craig was assisted during his first year of school at Holton by Dawn Alverson ("Alverson"). The Franklins allege that Craig performed well under Alverson's care and made substantial progress in his education. Alverson left Holton at the end of the school year. Holton hired defendant Margaret Frid ("Frid") to replace Alverson as Craig's aide during the 1996–97 school year.

The Franklins allege that Craig's performance in school began to decline as a result of Frid's conduct toward Craig. In particular, the Franklins allege that Frid intentionally humiliated and tormented Craig by poking him to get his attention, taking away utensils, and taunting him; that Frid intentionally hit and slapped Craig without justification; and that Frid verbally abused Craig. (Compl. ¶¶ 30, 32, and 36.) As a result of Craig's apparent decline in performance, the Franklins had Craig evaluated by a psychologist, Dr. Patricia J. Dauser. Dr. Dauser concluded that Frid had probably assaulted Craig on more than one occasion.

The Franklins allege that they brought their concerns about Frid to Defendants' attention through parent-teacher meetings and parent daytime interaction with teachers and staff, but Defendants failed to take any action. On December 4, 1996, an Individual Evaluation Plan Committee ("IEPC") meeting comprised of the Franklins and Defendants was held to address the Franklins'

concerns about Frid. At the conclusion of the meeting, the Franklins, who were unsatisfied with the outcome, requested a due process hearing. The Franklins also removed Craig and Eric from Holton and home-schooled them until they were admitted to Mona Shores Schools.[1]

On February 13, 1997, James Flaggert, the Special Education Due Process Hearing Officer appointed by the Michigan Department of Education to hear the dispute, arranged a conference call between the Franklins' counsel and Defendant Kevin Magin, Director of the Special Education program at Holton. During the conference call, the Franklins' counsel took the position that the due process hearing should be dismissed as moot because Craig had withdrawn from Holton with no intent to reenter. (*See* Pls.' Mem. Fed. Ques. Juris. Ex. C at 1.) Subsequently, the hearing officer determined in a written opinion that the matter was moot and dismissed the proceeding. The Franklins filed the instant action on February 4, 1997, one week before the conference call took place.

### Legal Standard

Defendants bring their motion under Fed. R.Civ.P. 12(c). If matters outside of the pleadings are considered on a motion under that rule, the Court must treat the motion as a motion for summary judgment under Rule 56. Fed.R.Civ.P. 12(c); *Latecoere Int'l, Inc. v. United States Dep't of the Navy*, 19 F.3d 1342, 1356 (11th Cir.1994). If the motion is converted to a motion for summary judgment, the opposing party must be given an opportunity to present summary judgment evidence. Fed.R.Civ.P. 12(c); *see also Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990).

■ Both parties have submitted evidence outside of the pleadings in their respective arguments in support of and in opposition to Defendants' motion. In addition, the Franklins cite summary judgment standards and contend that the motion must be treated as a motion for summary judgment. (*See* Pls.'

---

1. The Franklins' complaints of abuse by Frid were investigated by the Muskegon County Sheriff's Department. The investigation did not re-

sult in any charges being filed against Frid. (Pls.' Mem. Fed. Ques. Juris. Ex. B.)

Br. Resp. Defs.' Mot. Summ. J. at 3–4.) The Court concludes that summary judgment is the proper procedure for resolving Defendants' motion because neither party's arguments are limited to matters solely contained in the pleadings.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

*Discussion*

## I. The IDEA

The IDEA, originally enacted by Congress in 1970 as the Education of the Handicapped Act ("EHA"), makes funds available to states for special education on the condition that states implement policies assuring a "free appropriate public education" for all handicapped children. 20 U.S.C. § 1412(1). The primary mechanism for assuring a free appropriate public education is the development of a detailed, individualized instruction plan known as an Individualized Education Program ("IEP"). 20 U.S.C. §§ 1401(18)(D), 1414(a)(5). To the extent possible, however, a school must "mainstream" disabled children into regular education settings. 20 U.S.C. § 1412(5)(B).

The IDEA also provides certain procedural safeguards to parents. For example, parents may examine all relevant records regarding identification, evaluation, and educational placement of their children; must receive prior written notice if a school proposes or refuses to alter the child's identification, evaluation, or educational placement; may contest in an impartial due process hearing decisions regarding the education of their disabled child; and may obtain judicial review of an administrative decision regarding the identification, evaluation, or educational placement of the child. 20 U.S.C. § 1415(b)(1)(A), (b)(1)(C), (b)(2), and (e)(2).

Michigan has implemented the IDEA through the Mandatory Special Education Act, M.C.L. §§ 380.1701–380.1766 ("MSEA"). The MSEA provides detailed procedures for seeking administrative review of a violation of the IDEA by a school district. *See Waterman v. Marquette–Alger Intermed. Sch. Dist.,* 739 F.Supp. 361, 365–66 (W.D.Mich.1990)(summarizing administrative review process under MSEA). The IDEA does not preclude a disabled child from pursuing other available remedies under federal law in state or federal court, provided that the child first exhausts all administrative remedies available under state law where the relief sought is available under the IDEA. 20 U.S.C. § 1415(f);[2] *see also Doe v. Smith,* 879 F.2d 1340, 1343–44 (6th Cir.1989)(holding that parents were required to exhaust EHA (now IDEA) review procedures before seeking review of proposed IEP in federal court).

The importance and policy goals of the administrative process, especially the factfinding aspect, were summarized by the Sixth Circuit in *Crocker v. Tennessee Secondary School Athletic Ass'n,* 873 F.2d 933 (6th Cir.1989):

> The policies underlying this exhaustion requirement are both sound and important. States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the [IDEA]. Federal courts—generalists with no expertise in the educational needs of

---

2. Section 1415(f) provides:
   Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 ... or other Federal statutes protecting the rights of children and youth with disabilities, except that

before the filing of a civil action under such laws seeking relief that is also available under this part, [IDEA administrative review procedures] shall be exhausted to the same extent as would be required had the action been brought under this part.

handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the [IDEA]: "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education". Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.

*Id.* at 935 (citation omitted)(quoting *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984)).

## II. Application of IDEA Exhaustion Requirement

Defendants' primary contention is that the Franklins' § 1983 claim seeks relief available under the IDEA and, therefore, the Franklins' § 1983 claim should be dismissed without prejudice because they have not exhausted their administrative remedies as required by the IDEA. In responding to Defendants' motion, the Franklins initially argued that they were not required to exhaust administrative remedies because: (i) their § 1983 claim does not arise under the IDEA; (ii) the due process proceeding became moot when Craig was removed from Holton schools; and (iii) resort to administrative remedies would have been futile. At oral argument, the Franklins' counsel relied solely on the argument that exhaustion of administrative remedies is not required because the § 1983 claim does not arise under the IDEA. In fact, the Franklins' counsel seemed to disavow any relationship between the Franklins' claims and the IDEA. As Defendants' counsel observed, this position was not a little unexpected, especially in light of the Franklins' prior statement that "this Court has original and 'clean' federal question jurisdiction of this case under 42 U.S.C. § 1983 to remedy violations of the F–EHA/IDEA." (Pls.' Mem. Fed. Ques. Juris. at 9.)

■ Based upon the argument presented by the Franklins at the hearing on the motion, it appears that the Franklins have abandoned their futility and mootness arguments. Even if the Franklins have not abandoned those arguments, the Court finds both of them without merit. The Franklins have not met their burden of demonstrating that the administrative process would have been futile. *See Crocker,* 873 F.2d at 937 (burden of demonstrating futility of administrative procedures is on the party seeking to avoid them). The Franklins have not shown they were denied any procedural rights under the IDEA, that the hearing officer was biased, or that Defendants would or could have improperly influenced the administrative process. *See Waterman,* 739 F.Supp. at 369 (noting that violation of procedural rights under the EHA "does not ipso facto excuse exhaustion").

If the Franklins' claim arises under the IDEA, their mootness argument fails because they were bound to follow the administrative process regardless of whether Craig remained in the Holton system. In *Torrie v. Cwayna,* 841 F.Supp. 1434 (W.D.Mich.1994), this Court rejected the plaintiff's claim that exhaustion was not required because the child was no longer attending school in the defendant school district. *Id.* at 1442 (quoting *Doe v. Smith,* 879 F.2d 1340, 1343 (6th Cir.1989)("parents' unilateral act of removing their child from a public school ... does not mean that the procedures in the [IDEA] may be by–passed.")(alteration in original)); *accord N.B. v. Alachua County Sch. Bd.,* 84 F.3d 1376, 1379 (11th Cir.1996)(per curiam)(affirming district court's reasoning and citing *Torrie).* The same rule applies here. Thus, so long as the Franklins continued to pursue a claim through the administrative process arising under the IDEA, Craig's withdrawal from the Holton district did not render the matter moot.

■ The question then is whether the Franklins' claim arises under the IDEA. The Franklins argue that their claim is based upon a violation of constitutional rights independent of any rights arising under the IDEA. They assert that their claim does not concern the adequacy of Craig's IEP, with

which they claim they were satisfied, but Frid's behavior toward Craig, which they characterize as physically and verbally abusive, controlling, and demeaning. (Pls.' Br. Resp. Defs.' Mot. Summ. J. at 5, 12.) The Franklins contend that they are not required to comply with the administrative process under the IDEA to vindicate constitutional rights which have nothing to do with an IEP simply because Craig is a disabled child covered by the IDEA. (*Id.* at 12.)

■ The Court does not disagree that, as a broad proposition, a disabled child who asserts a constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative remedies under the IDEA before filing suit under § 1983. For example, a disabled child who is sexually abused or severely beaten by a teacher or school official—acts having no relationship to the appropriate education of a disabled child—would not come within the purview of the IDEA. *See Campbell v. Nye County Sch. Dist.,* No. 94–15747, 1995 WL 597706, at *2 (9th Cir. Oct.10, 1995)(mem.op.)(finding that § 1983 claim for compensatory damages based upon beatings of children by school personnel could not have been brought under the IDEA where plaintiffs did not claim beatings were disciplinary in nature and beatings could not have been discipline under Nevada law prohibiting corporal punishment in schools); *Webb v. McCullough,* 828 F.2d 1151, 1159 (6th Cir.1987)(recognizing substantive due process claim based upon corporal punishment which demonstrates "a brutal and inhumane abuse of . . . official power, literally shocking to the conscience"). On the other hand, where the alleged acts constitute discipline and not random acts of violence, courts have generally held that claims based upon such conduct fall within the IDEA. *See Hayes v. Unified Sch. Dist. No. 377,* 877 F.2d 809, 812–13 (10th Cir.1989)(holding that discipline consisting of use of time-out room and in-school suspensions was related to providing an appropriate public education under EHA); *Moore v. Harriman City Schools,* No. 92–5572, 1994 WL 18021, at *1 (6th Cir. Jan.21, 1994)(finding in-class discipline to be within the EHA); *Waterman,* 739 F.Supp. at 365 (holding plaintiffs' claims about excessive disciplinary acts and practices to be cognizable under EHA); *Pullen v. Botetourt County Sch. Bd.,* No. 94–686–R 1995 WL 738983, at *4 (W.D.Va. Feb. 13, 1995)(mem.op.)(noting that discipline and in-class instruction are closely related to provision of free appropriate public education pursuant to IDEA).

In this case, the Court need only look to the Franklins' complaint to determine whether the claim arises under the IDEA. Count IV, the Franklins' § 1983 claim, is steeped in allegations referring to the IDEA itself and to Defendants' compliance or non-compliance with their obligation to provide a free and appropriate public education, the touchstone of the IDEA. For example, in paragraphs 80 and 81, the Franklins allege that "Defendants were . . . charged with the implementation of the . . . IDEA," and that "Defendant[ ]s [sic] . . . refus[ed] to provide Craig with an appropriate and free educational environment appropriate to his needs as a person[ ] disabled within the meaning of the IDEA." (Compl.¶¶ 80, 81.) It is thus clear that while the Franklins' § 1983 claim may include elements of alleged physical and mental abuse that have no relationship to the IDEA, the gravamen of the claim is that Defendants deprived Craig of his right to an appropriate public education under the IDEA. The Franklins' own characterization of their § 1983 claim in their brief in response to Defendants' motion and in their memorandum regarding jurisdiction further supports this conclusion. (*See* Pls.' Mem. Fed. Ques. Juris. at 5–9; Pls.' Br. Resp. Defs.' Mot. Summ. J. at 13 ("Plaintiffs allege that neither Craig nor Eric Franklin received a free and appropriate public education").)

The Franklins' labeling of their claim as a violation of their due process or equal protection rights does not excuse the Franklins from exhausting the administrative process under the IDEA. *See W.L.G. v. Houston County Bd. of Educ.,* 975 F.Supp. 1317, 1328 (M.D.Ala.1997)(finding that plaintiffs' equal protection and due process claims for failure to provide free and appropriate public education were indistinguishable from plaintiffs' IDEA claim). In short, the Franklins' complaint about Frid "deals with acts that have

both an educational source and an adverse educational consequence," *Charlie F. v. Board of Educ. of Skokie Sch. Dist. 68,* 98 F.3d 989, 993 (7th Cir.1996), and is subject to the exhaustion requirement of the IDEA. The Court therefore concludes that the Franklins have failed to exhaust their administrative remedies and will dismiss this action without prejudice to allow them to comply with the administrative process.[3]

### III. Application of Intra-corporate Conspiracy Doctrine to Franklins' § 1985 Claim

Defendants have also moved for summary judgment on the Franklins' conspiracy claim under 42 U.S.C. § 1985(3) on the ground that the individual defendants were acting as officers or agents of a single entity, Holton schools, and thus there could be no conspiracy. The Franklins allege in Count V of their complaint that Defendants conspired to blame Craig for his own problems instead of investigating Frid and that the conspiracy operated to deprive Craig of his right to a free and appropriate public school education.

■ The "intra-corporate conspiracy" doctrine, which has its roots in antitrust law, *see Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952), provides that a corporation cannot conspire with its own agents or employees. *Doherty v. American Motors Corp.,* 728 F.2d 334, 339 (6th Cir.1984). In *Hull v. Cuyahoga Valley Joint Vocational School District Board of Education,* 926 F.2d 505 (6th Cir.1991), the Sixth Circuit applied the intra-corporate conspiracy doctrine to bar a claim under § 1985(3) by a teacher whose nontenured contract was not renewed. *Id.* at 509–10;[4] *see also Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, at 839–40 (6th Cir.1994).

■ In this case, with the exception of Defendant Kevin Magin, there is no dispute that all of the individual defendants were employees of Holton schools. At oral argu-

ment, the Franklins' counsel informed the Court that they had learned from Magin's recent deposition testimony that he was not an employee of Holton, but instead was performing services for Holton under a contract between Holton and his employer, Reeths–Puffer Schools. Nonetheless, the Court finds from the undisputed evidence presented by Defendants that Magin was in fact acting as an agent of Holton.

■ An agent is a person "who acts on behalf of another, particularly with regard to the conduct of business transactions." *Lincoln v. Fairfield–Nobel Co.,* 76 Mich.App. 514, 519, 257 N.W.2d 148, 150 (1977). The existence of an agency relationship turns on whether the principal has the right to control the actions of the agent. *See Meretta. v. Peach,* 195 Mich.App. 695, 697, 491 N.W.2d 278, 280 (1992). Magin testified that the superintendent of Reeths–Puffer Schools reviews his performance, although the Holton superintendent may provide input into Magin's evaluation. (Magin Dep. at 37–38, Defs.' Suppl. Br. Ex. 1.) Magin further testified that he acts at the direction of the Holton superintendent:

> The superintendent of Holton is free to ask me to do or tell—direct me to do anything in the area of special education he likes in his district. If he needs more input, if I'm not doing what he likes or something, he can deal with me directly, but I work for Reeths–Puffer Schools.... But clearly he can tell me he wants me to do certain things or not do things and those will get done.

(*Id.* at 38.)

Based upon Magin's undisputed testimony, it is clear that Magin was an agent for Holton. Thus, the intra-corporate conspiracy doctrine applies to bar the Franklins' claim under § 1985(3). The Franklins do not allege that any of the individual Defendants acted beyond the scope of their employment

---

3. Because the Court has concluded that the Franklins have failed to exhaust their administrative remedies, the Court does not reach the other issue raised by Defendants of whether the Franklins may recover money damages under the IDEA.

4. The circuits are currently divided on whether the intra-corporate conspiracy doctrine is applicable to claims under § 1985(3). *See Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1126–27 and 1127 nn. 8–9 (10th Cir.1994).

or that any of the individual Defendants had an independent personal stake in depriving Craig or Eric of their Constitutional rights.[5] *See Johnson,* 40 F.3d at 840–41 (discussing scope of employment exception to doctrine); *Brever,* 40 F.3d at 1127 (applying exception for independent personal stake in illegal objective). Therefore, Defendants are entitled to summary judgment on the Franklins' § 1985(3) claim. The Court also finds that Defendants are entitled to summary judgment on the Franklins' claim under 42 U.S.C. § 1986 because a violation of § 1985 is a predicate for a violation of § 1986. *See Browder v. Tipton,* 630 F.2d 1149, 1155 (6th Cir.1980); *Harris,* 798 F.Supp. at 1346.

## IV. State Law Claims

 The Franklins' state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c). "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996)(citing *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank,* 738 F.2d 163, 166 (6th Cir.1984)). Further, the Sixth Circuit has said that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson,* 89 F.3d at 1254–55. In dismissing the state law claims, Counts I through III, the Court recognizes that the Franklins may refile their § 1983 claim and their state law claims after exhausting their administrative remedies if they are dissatisfied with the results. At this point, however, the Court believes that the more appropriate course is to dismiss all claims until the administrative process has been tested.

### Conclusion

For the foregoing reasons, the Court will dismiss the Franklins' § 1983 claim without prejudice to allow them to pursue their administrative remedies under the IDEA. The

Court will also grant Defendants summary judgment on the Franklins' § 1985(3) and § 1986 claims. Finally, the Court will dismiss the Franklins' state law claims pursuant to 28 U.S.C. § 1367(c).

---

**5.** The Court's finding that the Franklins' claim is barred by the intra-corporate conspiracy doctrine is not affected by the fact that they have sued the defendants in their individual capacities as well as their official capacities, because the Franklins have failed to allege that the individual defendants acted beyond the scope of their normal duties as agents or employees of Holton. *See Harris v. Board of Educ. of Columbus, Ohio, City School Dist.,* 798 F.Supp. 1331, 1345–46 (S.D.Ohio 1992).