R.M., D.M., and B.M., a Minor, by his Grandfather and Grandmother and Next Friends, R.M. and D.M., Plaintiffs,

v.

The WAUKEE COMMUNITY SCHOOL DISTRICT and Heartland Area Education Agency 11, Randy Nemitz (in his individual and official capacity), Amy Shaw (in her individual and official capacity), Wendy Foreman (in her individual and official capacity), Beverly Kikoler (in her individual and official capacity), Ann Hilliard (in her individual and official capacity), Karen Lenz (in her individual and official capacity), Sallie Leibhart (in her individual and official capacity), Stacy Marsau n/k/a Stacy Lofstrom (in her individual and official capacity), Peg Erke (in her individual and official capacity), Tara Kelly (in her individual and official capacity), Vicki Sanders (in her individual and official capacity), Roxanne Cumings (in her individual and official capaci-

ty), Nicole Tjaden (in her individual and official capacity), Tracy Kreis (in her individual and official capacity), Jason Sanders (in his individual and official capacity), Kathy Allison (in her individual and official capacity), Stacy Volmer (in her individual and official capacity), Leslie Nelson (in her individual and official capacity), Lyndsey Dittmer (in her individual and official capacity), T.G. Employee Involved in Restraining B.M. (in her individual and official capacity), Tonya Gatrel (in her individual and official capacity), and Dave Wilkerson (in his individual and official capacity), Defendants.

No. 4:08–CV–00052.

United States District Court,
S.D. Iowa,
Central Division.

Dec. 5, 2008.

Thad J. Collins, Matthew G. Novak, Pickens Barnes & Abernathy, Cedar Rapids, IA, Beth E. Hansen, Swisher & Cohrt, PLC, Waterloo, IA, for Defendants.

Jeffrey S. Carter, Jeff Carter Law Office P.C., Des Moines, IA, Bruce H. Stoltze, Eric M. Updegraff Stoltze & Updegraff PC, Des Moines, IA, for Plaintiff.

ROBERT W. PRATT, Chief Judge.

Before the Court are two motions. The first is a Motion to Dismiss or for More Definite Statement, filed July 17, 2008 by Defendants Heartland Area Education Agency 11 ("Heartland"), Kathy Allison, Ann Hilliard, Tara Kelly, Tracy Kreis, Vicki Sanders, and Stacy Volmer (collectively, "Heartland Defendants"). Clerk's No. 33. On the same date, the Waukee Community School District ("Waukee School"), Randy Nemitz, Amy Shaw, Beverly Kikoler, Sallie Leibhart, Stacy Marsau n/k/a Stacy Lofstrom, Peg Erke, Rox-

anne Cumings, Nicole Tjaden, Jason Sanders, Leslie Nelson, Lyndsey Dittmer, Lisa Lentell, T.G. Employee involved in restraining B.M., Tanya Gatrel, and Dave Wilkerson (collectively, "Waukee Defendants" [1]), filed a Joinder in this first motion. Clerk's No. 35. The second is a Motion to Dismiss, filed on October 10, 2008 by Heartland Defendants. Clerk's No. 56. On the same date, Waukee Defendants filed a Joinder in this second motion. Clerk's No. 57. After receiving an extension of time, Plaintiffs filed a Resistance to the second Motion to Dismiss on November 17, 2008. Clerk's No. 62. Defendants' Reply was filed on November 26, 2008. Clerk's No. 65.

Between the filing of the two motions, Plaintiffs filed an Amended Complaint. Clerk's No. 43. The Court finds that the Amended Complaint rendered the request for a more definite statement brought by Defendants moot. Moreover, the Court finds that the second Motion to Dismiss (Clerk's No. 56) has superseded the first (Clerk's No. 33). Thus, the Court denies Defendants' Motion to Dismiss or for More Definite Statement (Clerk's No. 33) as moot and considers only their more recent Motion to Dismiss (Clerk's No. 56). The matter is fully submitted.

## I. FACTUAL BACKGROUND

Plaintiffs filed a Complaint in the above-captioned action on February 7, 2008. Clerk's No. 1. Plaintiffs filed an Amended Complaint and Jury Demand on September 5, 2008. Clerk's No. 43. The Amended Complaint alleges that in late August 2004, while in his grandparents' custody, B.M. was enrolled at Waukee Elementary School. Am. Compl. ¶ 13. Shortly thereafter, B.M. began to show increased behavior difficulties. *Id.* ¶ 15. These diffi-

culties continued and worsened until he was eventually removed from Waukee Elementary on February 13, 2007. *Id.* ¶ 17. During his enrollment at Waukee Elementary, B.M.'s grandparents, D.M. and R.M., were actively involved in his education and made numerous verbal and written requests to Defendants concerning B.M.'s educational instruction and behavioral intervention. *Id.* ¶¶ 18–19. The alleged conduct of Defendants during B.M.'s enrollment at Waukee Elementary prompts this suit.

Heartland prepared an Individualized Education Program ("IEP") for B.M. *Id.* ¶ 47. A copy was given to D.M. on October 28, 2004. *Id.* The IEP indicated that most of B.M.'s time at school would be spent in a special education classroom without interaction with the general education students. *Id.* ¶ 48. At the same time, a Behavior Management Plan ("BMP") was created and put into place. *Id.* ¶ 49. This BMP provided direction for when B.M. was noncompliant during a work session. *Id.* It also created a Crisis Management Plan ("CMP"). *Id.*

The initial IEP was reevaluated on December 8, 2004, *id.* ¶ 51, and new IEPs were developed in January and again in March. *Id.* ¶ 55. Throughout his kindergarten year, B.M.'s behavior appears to have deteriorated. *Id.* ¶ 52. On several occasions, the CMP was implemented, although Waukee Elementary's staff allegedly failed to comply with the CMP's directives. *Id.* During his kindergarten year, B.M. was repeatedly put in time-outs. *Id.* ¶ 58. However, logs from these time-outs were not sent to D.M. and R.M. *Id.*

B.M.'s difficulties continued during his first-grade year. In March of the 2005–06

---

1. Waukee Defendants and Heartland Defendants will be collectively referred to as "Defendants."

school year, D.M. and R.M. requested that Waukee notify a family member when B.M. was put in time-out. *Id.* ¶ 60. Defendant Nemitz only agreed to notify B.M.'s family when a time-out lasted longer than 30 minutes. *Id.* ¶ 61. B.M. was placed in the time-out room 64 times during his first-grade year for an average of nearly 50 minutes per occurrence. *Id.* ¶ 62. During at least two of these time-outs, B.M. was isolated for over 1 hour and 30 minutes, and during at least one session, he was isolated over two hours. *Id.* ¶ 64. His family was notified about only 17 of the 64 occurrences. *Id.* ¶ 63. During some of these time-outs, B.M. was permitted to engage in self-abuse, including hitting his head, biting himself, and choking himself, causing numerous physical injuries. *Id.* ¶ 68–70. Even during long time-outs, B.M. was not permitted to use the restroom. *Id.* ¶ 71. During his first-grade year, B.M. was also physically restrained on several occasions, *id.* ¶¶ 65–67, and was also occasionally either physically carried or pushed in a chair to the time-out room. *Id.* ¶ 72.

B.M. continued to have behavioral difficulties and to be placed in the time-out room throughout his second-grade year. Between August 24 and November 9, 2006, he was sent to the time-out room 19 different times, again for an average of roughly 50 minutes per time-out. *Id.* ¶ 77. In November, D.M. and R.M. revoked their permission for Defendants to use the time-out room. *Id.* ¶ 78. However, their revocation only ended the use of the time-out room; the use of time-outs continued. *Id.* ¶ 79. Plaintiffs allege at least 21 time-outs between December 2006 and February

2007 of an average duration exceeding one hour each. *Id.* ¶ 80.

On February 12, 2007, D.M. and R.M. requested a "pre-appeal conference" with Defendants Waukee and Heartland. *Id.* ¶ 93. The conference addressed the following issues: (1) the behavior interventions used by Waukee and Heartland; (2) the adequacy of monitoring during these interventions; (3) the past and future impact of these interventions on B.M.; (4) the continuation of these interventions despite their effect on B.M.; and (5) the prolonged use of these interventions. *Id.* ¶ 29. As a result of this conference, Waukee, Heartland, and Plaintiffs agreed to a plan of action. *Id.* ¶ 30. However, on the following day, D.M. and R.M. removed B.M. from Waukee Schools, and subsequently enrolled him at Eason Elementary. *Id.* ¶¶ 73, 94.

Plaintiffs claim that Defendants' conduct toward and treatment of B.M. caused various damages. The Amended Complaint asserts ten causes of actions: (1) denial of substantive and procedural due process, in violation of 42 U.S.C. § 1983; (2) denial of equal protection, in violation of 42 U.S.C. § 1983; (3) violation of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; (4) assault and battery; (5) false imprisonment; (6) corporal punishment; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; (9) negligence—bystander; and (10) intentional or reckless infliction of emotional distress—bystander.[2] In their Motion to Dismiss, Defendants assert that none of Plaintiffs' causes of actions are viable and that each and every count must be dismissed under

---

**2.** Plaintiffs have numbered the first six of the ten causes of action Counts I, II, III, IV, V, and VI. However, Plaintiffs have omitted roman numeral seven from their numbering scheme. Thus, the last four causes of action

are errantly numbered Counts VIII, IX, X, and XI. For clarity, the Court will not renumber the counts and will instead adopt Plaintiff's numbering scheme.

Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).

## II. LEGAL ANALYSIS

The first three of the ten total counts set forth in the Amended Complaint are federal law claims. The final seven are state law claims. For reasons articulated in discussion to follow, the Court has serious concerns about the viability of the federal law claims. These concerns arise from Plaintiffs' apparent failure to exhaust certain administrative remedies as required by law. The Court focuses its discussion below on this failure and the implications arising therefrom. Accordingly, it does not reach many of the issues discussed in the parties' briefs.

### A. *Background on the Individuals with Disabilities Education Act's Exhaustion Requirement*

In *Winkelman v. Parma City School District*, the Supreme Court described the basic functions and procedures of the Individuals with Disabilities Education Act ("IDEA"). 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007). The Supreme Court identified two goals of IDEA: (1) "ensur[ing] that all children with disabilities have available to them a free appropriate public education"; and (2) "ensur[ing] that the rights of children with disabilities and parents of such children are protected." *Id.* at 2000 (quoting 20 U.S.C. §§ 1400(d)(1)(A)-(B) (2000)). A "free and appropriate public education" consists of "educational instruction 'specially designed ... to meet the unique needs of a child with a disability,' ... coupled with any additional 'related services' that are 're-quired to assist a child with a disability to benefit from [that instruction].' " *Id.* at 2000–01 (quoting 20 U.S.C. §§ 1401(29); 1401(26)(A); citing § 1401(9)).

The Supreme Court also described the procedural recourse available "[w]hen a party objects to the adequacy of the edu-cation provided, the construction of the IEP, or some related matter," as follows:

[IDEA] requires that a State provide "[a]n opportunity for any party to pres-ent a complaint ... with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(6). By presenting a complaint a party is able to pursue a process of review that, as relevant, be-gins with a preliminary meeting "where the parents of the child discuss their complaint" and the local educational agency "is provided the opportunity to [reach a resolution]." § 1415(f)(1)(B)(i)(IV). If the agency "has not resolved the complaint to the satisfaction of the parents within 30 days," § 1415(f)(1)(B)(ii), the parents may request an "impartial due process hearing," § 1415(f)(1)(A), which must be conducted either by the local educational agency or by the state educational agen-cy, *ibid.*, and where a hearing officer will resolve issues raised in the complaint, § 1415(f)(3).

*Id.* Where the due process hearing is be-fore a local educational agency, rather than the state educational agency, "any party aggrieved by the findings and deci-sion rendered in such a hearing may ap-peal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1). Once the state educational agency reaches a decision, "any party ag-grieved" may bring suit in federal court. *See Winkelman*, 127 S.Ct. at 2000 (citing 20 U.S.C. §§ 1415(i)(2)(A); 1415(i)(1)). IDEA is not the exclusive mechanism to protect the rights of disabled students. Congress has expressly preserved other remedial schemes, providing generally as follows:

Nothing in [IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities. . . .

20 U.S.C. § 1415($l$). However, Congress prevented would-be plaintiffs from circumventing the administrative remedies it crafted for IDEA by imposing the following exception: "[B]efore the filing of a civil action under such laws seeking relief that is also available under [IDEA], the procedures under [§§ 1415(f) and (g)] shall be exhausted to the same extent as would be required had the action been brought under [IDEA]." 20 U.S.C. § 1415($l$). Defendants argue that Plaintiffs' federal law claims—under § 1983 and the RA—should be dismissed on the grounds that Plaintiffs have not exhausted administrative remedies, as required under § 1415($l$). The Court now considers: (1) whether Plaintiffs' federal law claims implicate § 1415($l$)'s administrative exhaustion requirement; (2) if these claims do implicate the requirement, whether Plaintiffs have, in fact, exhausted the administrative procedures set forth in §§ 1415(f) and (g); and (3) if these procedures were not exhausted, whether Plaintiffs' failure to exhaust is excused.

### B. *Plaintiffs' Federal Law Claims Implicate the Exhaustion Requirement*

■■■■ The plain language of § 1415($l$) requires exhaustion of §§ 1415(f) and (g) before a plaintiff can assert a claim under the Americans with Disabilities Act ("ADA"), RA, or "other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415($l$). While it is clear to the Court that Plaintiffs' claim under the RA is subject to the administra-

tive exhaustion requirement, it is slightly less clear whether their claims under § 1983 are subject to this requirement. That is because the Eighth Circuit has not yet addressed whether § 1415($l$) requires administrative exhaustion before § 1983 claims may be asserted. However, the majority of courts addressing this question have concluded that § 1415($l$) requires exhaustion where the § 1983 claim has a sufficiently close relationship to IDEA. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 248 (2d Cir.2008); *Covington v. Knox County Sch. Syst.*, 205 F.3d 912, 916 (6th Cir.2000); *Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 991–93 (7th Cir.1996); *Franklin v. Frid*, 7 F.Supp.2d 920, 925 (W.D.Mich.1998); *Doe v. Alfred*, 906 F.Supp. 1092, 1098 (S.D.W.Va.1995) (noting that "a clear majority of courts hold exhaustion necessary despite the assertion of a contemporaneous § 1983 claim for damages").

In *Cave*, the Second Circuit concluded: "The language of [§ 1415($l$)] is sufficiently broad and encompasses complaints asserted under *any* federal statute, as long as they seek relief available under the IDEA." 514 F.3d at 248. Thus, if IDEA is applicable, it forecloses relief under the ADA, RA, or § 1983. 514 F.3d at 245, n. 2; *but see W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir.1995) ("[B]y its plain terms § 1415[($l$)] does not require exhaustion where the relief sought is unavailable in an administrative proceeding."), *abrogated in A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir.2007). The Court, relying on the weight of persuasive authority, believes that exhaustion is generally required before a § 1983 claim predicated on conduct that also offends IDEA may proceed.

■■■■ However, the Court must now pause to consider whether IDEA is "applicable" or, stated differently, whether Plaintiffs' § 1983 claims are sufficiently related to IDEA to implicate § 1415($l$)'s ex-

haustion requirement. In *Franklin*, the Federal District Court in the Western District of Michigan thoughtfully considered the nexus necessary to implicate the requirement. The court first considered situations in which the relationship between the § 1983 claim and IDEA was too tenuous to implicate the exhaustion requirement, as follows:

> The Court does not disagree that, as a broad proposition, a disabled child who asserts a constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative remedies under the IDEA before filing suit under § 1983. For example, a disabled child who is sexually abused or severely beaten by a teacher or school official—acts having no relationship to the appropriate education of a disabled child—would not come within the purview of the IDEA. *See Campbell v. Nye County Sch. Dist.,* No. 94–15747, 1995 WL 597706, at *2 (9th Cir. Oct.10, 1995) (mem. op.) . . .; *Webb v. McCullough,* 828 F.2d 1151, 1159 (6th Cir.1987) (recognizing substantive due process claim based upon corporal punishment which demonstrates "a brutal and inhumane abuse of . . . official power, literally shocking to the conscience").

*Franklin,* 7 F.Supp.2d at 925. However, the court went on to contrast the above situations with others in which a closer relationship between IDEA and the § 1983 claims exists, stating:

> On the other hand, where the alleged acts constitute discipline and not random acts of violence, courts have generally held that claims based upon such conduct fall within the IDEA. *See Hayes v. Unified Sch. Dist. No. 377,* 877 F.2d 809, 812–13 (10th Cir.1989) (holding that discipline consisting of use of time-out room and in-school suspensions was re-

lated to providing an appropriate public education under EHA); *Moore v. Harriman City Schools,* No. 92–5572, 1994 WL 18021, at *1 (6th Cir. Jan.21, 1994) (finding in-class discipline to be within the EHA); *Waterman [v. Marquette–Alger Intermediate Sch. Dist.],* 739 F.Supp. [361,] 365 (holding plaintiffs' claims about excessive disciplinary acts and practices to be cognizable under [IDEA's predecessor] ); *Pullen v. Botetourt County Sch. Bd.,* No. 94–686–R, 1995 WL 738983, at *4 (W.D.Va. Feb. 13, 1995) (mem. op.) (noting that discipline and in-class instruction are closely related to provision of free appropriate public education pursuant to IDEA).

*Id.*

In the present action, this Court finds that Plaintiffs' § 1983 claims are sufficiently connected to IDEA to implicate the exhaustion requirement. The Court need not look further than the Plaintiffs' original Complaint. In the Complaint Plaintiffs initially filed, they asserted a claim under IDEA, 20 U.S.C. §§ 1414–15 [3] (Count I) as well as claims under 42 U.S.C. § 1983 (Counts II and III) and the RA, 29 U.S.C. § 794 (Count IV). *See* Compl. at 4–8. In the original Complaint, the federal law claims asserted in Counts II and III incorporated and, in fact, relied on allegations of conduct identical to that giving rise to the IDEA claim. While the Amended Complaint excluded the IDEA claim, it reasserted these other federal law claims. *See* Am. Compl. at 16–23. On this basis, the Court believes that Plaintiffs' § 1983 claims are related to IDEA and, accordingly, the exhaustion requirement imposed by § 1415(*l* ) is implicated. The Court's belief is strengthened by the fact that neither Plaintiffs' original nor Amended Complaints suggest the sort of abuse or random acts of violence the *Franklin* court described as being present in cases where

---

**3.** Plaintiffs errantly cited 42 U.S.C. §§ 1414– 15, not 20 U.S.C. §§ 1414–15. Compl. at 4.

the exhaustion requirement is not implicated. Moreover, Plaintiffs seem to concede that both their § 1983 and RA claims are subject to the administrative exhaustion requirement unless excused, by arguing that if they have not exhausted administrative remedies, such exhaustion should be excused. *See* Pls.' Resistance at 30–31.

### C. *Plaintiffs Have Failed to Exhaust the Administrative Remedies*

■ The Court disagrees with Plaintiffs statement that they have, in fact, exhausted the administrative remedies set forth in §§ 1415(f) and (g). Respectively, these provisions discuss a due process hearing at the state or local level and, if the hearing was conducted at the local level, an appeal of that hearing to a State educational agency. Nowhere in Plaintiffs' Amended Complaint can the Court find anything to indicate that Plaintiffs have participated in such proceedings. In Plaintiffs' Resistance, they contend that they sought a "pre-appeal conference" in which they "received relief from the agency." Pls.' Resistance at 31. Plaintiffs apparently contend that this pre-appeal conference satisfied the administrative exhaustion requirement imposed by IDEA. *See* Pls.' Resistance at 32 ("The Court should find that the Plaintiffs have exhausted their administrative remedies under IDEA because the Plaintiff's [sic] have already received the relief they sought in the pre-appeal process when considering other causes of action.").

The "pre-appeal" conference to which Plaintiffs refer appears to be a meeting between Plaintiffs, Waukee School, and Heartland to try to work out areas of disagreement regarding B.M.'s special education needs. Even if Plaintiffs thought this pre-appeal conference was a mediation, as provided for by § 1415(e), such mediation neither replaces nor satisfies the requirement imposed by § 1415(*l*) that they participate in the due process hearing provided for in §§ 1415(f) and (g). Accordingly, the Court finds, on the record before it, that Plaintiffs have failed to exhaust these administrative remedies.

### D. *Plaintiffs Failure to Exhaust Administrative Remedies is Not Excused*

■ While, as described above, administrative exhaustion is generally a necessary condition precedent to bringing a § 1983 claim with a close connection to IDEA, the Court now considers Plaintiffs' argument that the exhaustion requirement should be excused. Courts have recognized that administrative exhaustion is not required where: (1) exhaustion would be futile; (2) exhaustion would be inadequate; or (3) "an agency policy or practice of general applicability that is contrary to law" has been established. *Blackmon ex rel. Blackmon v. Springfield R–XII Sch. Dist.,* 198 F.3d 648, 656 (8th Cir.1999). Plaintiffs do not indicate which of these three exceptions they think may apply and instead say simply, "The facts of the case ... demonstrate that the Plaintiffs sufficiently exhausted their administrative remedies *or at least should be excused from doing so.*" Pls.' Resistance at 32 (emphasis added). On the present record, the Court cannot find that Plaintiffs' failure to exhaust administrative remedies falls within any of the exceptions listed above.[4]

### E. *Implications of Plaintiffs' Apparent Failure to Exhaust Administrative Remedies.*

"A complaint based on the IDEA is not a justiciable controversy until Plaintiffs

4. Furthermore, the Court does not believe that B.M.'s withdrawal from Waukee Schools excuses the exhaustion requirement. *See Franklin,* 7 F.Supp.2d at 924 (concluding that the plaintiffs "were bound to follow the administrative process regardless of whether [the disabled student] remained in [the school system].").

have exhausted their administrative remedies under the IDEA or proved that exhaustion would be futile or inadequate." *Plumbly v. N.E. Indep. Sch. Dist.*, No. SA–06–CV–00690–XR, 2006 WL 2469169, *3 (W.D.Tex. Aug.17, 2006) (citing 20 U.S.C. § 1415(*l*); *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 112 (5th Cir. 1992)). Because the Court believes that each of the federal law claims that Plaintiffs have asserted requires Plaintiffs to have exhausted §§ 1415(f) and (g), and because Plaintiffs apparently have failed to do so, the Court believes—at least on the present record—that each federal claim must be dismissed.

However, given the parties' abbreviated attention in their briefs to the issues addressed above, the Court feels it appropriate to give Plaintiffs an opportunity to respond to the concerns the Court has articulated herein. Thus, the Court will give Plaintiffs the opportunity to articulate either: (1) in what way they have exhausted the procedures provided for in §§ 1415(f) and (g); or (2) for what reasons such exhaustion should be excused. How-

ever, if Plaintiffs fail to submit convincing arguments by December 19, 2008, the Court's conclusion that each of Plaintiffs' federal law claims should be dismissed pursuant to Rule 12(b)(6) will become final.[5]

## III. CONCLUSION

For the reasons discussed herein, Plaintiffs' first Motion to Dismiss (Clerk's No. 33) is DENIED as moot. Plaintiffs are granted until December 19, 2008 to articulate compelling reasons why this case should not be dismissed for failure to exhaust administrative remedies. If Plaintiffs cannot or elect not to advance a compelling argument, they may so inform the Court. Absent such articulation, the Court will grant Defendants' second Motion to Dismiss (Clerk's No. 56) and dismiss the case in its entirety after December 19, 2008 for the reasons stated herein.[6]

IT IS SO ORDERED.

---

**5.** The Court accepted jurisdiction over Plaintiffs' state law claims pursuant to its supplemental jurisdiction as authorized by 28 U.S.C. § 1367(a). This section provides generally as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the [U.S.] Constitution....

28 U.S.C. § 1367(a). However, § 1367(c) authorizes a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The Court believes the state courts in Iowa are better situated to address the array of complex state law issues the parties have raised. Specifically, the Court believes the

Iowa courts are better situated to determine whether the Iowa Civil Rights Act, Iowa Code § 216.9, preempts certain common law torts given the unclear standard the Iowa Supreme Court articulated in *Greenland v. Fairtron Corp.*, 500 N.W.2d 36 (Iowa 1993) and also whether Iowa Code § 280.21 has displaced assault and battery and false imprisonment in the educational context, given the conflicting statutory language and dearth of case law on point. Accordingly, the Court hereby informs the parties that in the event this Order dismissing the federal claims becomes final, the Court will decline to retain supplemental jurisdiction over Plaintiffs' state law claims.

**6.** If Plaintiffs do opt to argue that they have successfully exhausted their administrative remedies, or that exhaustion is otherwise waived, Defendants may file a resistance and Plaintiffs may file a reply to Defendants' resistance within the time frames normally permitted by the Local Rules.