United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 28, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-20259
_____

SEAN CARLOS IBARRA; ERIK ADAM IBARRA,

Plaintiffs - Appellees,

versus

HARRIS COUNTY TEXAS; TOMMY THOMAS, Sheriff,
Individually and in his official capacity;
PRESTON FOOSE, Deputy, Individually and in
his official capacity; MANUEL MORENO, Deputy,
Individually and in his official capacity;
ALEXANDER ROCHA, Sergeant, Individually
and in his official capacity; JOHN PALERMO,
Deputy, Individually and in his official
capacity; DAN SHATTUCK, Deputy, Individually
and in his official capacity; ALBERT
RODRIGUEZ, Expert Witness,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston
USDC No. 4:04-CV-186
_____

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

PER CURIAM:[*]

This case, before us on interlocutory appeal, arises out of an incident in which the Harris County Sheriff's deputies raided the Ibarra home after observing Sean Ibarra taking photographs of deputies executing a search warrant at a neighbor's residence. The

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Defendants appeal the district court's denial of their motion for summary judgment on qualified immunity.

I.

At approximately 2:30 p.m. on January 4, 2002, members of the Harris County Organized Crime Task Force arrived at 2911 Shady Park Drive in Houston, Texas for the purpose of executing a search warrant.[1]  Shortly before 3:00 p.m., Sean Ibarra returned to his residence at 2907 Shady Park Drive.  He observed marked police vehicles in the street and several officers in uniform or wearing "Police" or "Sheriff" jackets walking around the premises at 2911 Shady Park Drive.  He saw children on the premises who were not wearing coats and appeared to be cold.  At some point in time, Sean was told that one of the children had been assaulted by one of the officers and that at least one of the children had urinated on himself and had not been permitted to change clothing.  Sean continued to observe the children for almost an hour, during which time none of the children were given additional clothing.

Some time later, Madalyn Valdez appeared at the front door of the Ibarra residence, complaining about how the officers were treating the children, some of whom were her grandchildren.  She asked to borrow a camera to document the manner in which the children were being treated.  Sean Ibarra offered to take the

---

[1] Because we are reviewing the district court's denial of motions for summary judgment on qualified immunity on interlocutory appeal, we relate the facts as alleged by the Ibarras.  See Meadows v. Ermel, 483 F.3d 417, 422 (5th Cir. 2007).

2

photographs because he thought it would be safer for him to do so. At this point, it was also decided that Erik Ibarra would park his truck on the public street and videotape the scene, but Erik was unable to because his truck was blocked in the driveway. Sean took the camera and proceeded outside where he took pictures for approximately 45 minutes. He remained on his property, the sidewalk, or in the public street at all times, and did nothing to interfere with the officers executing the search warrant.

At some point, a uniformed officer, Deputy Foose, observed Sean taking photographs of the scene at 2911 Shady Park Drive. Foose ordered Sean to stop taking photographs and to "come here." Sean hesitated, then took another photograph. Sean saw the officer become agitated and yell to someone. He gave the camera to Ms. Valdez and proceeded to follow her and his mother back toward his house. By the time he reached his front door, Foose was immediately behind him. Sean grabbed the frame of the front door with his back to the officers and told them they were not welcome in his house. At that point, Sean says that Foose struck him in the back, kidneys, and on the side of his face. As he began to fall, Foose hit him again in the head and he fell to the floor. Foose then turned to Ms. Valdez who was holding the camera and began to hit and assault her. He was stopped by another officer, believed to be Deputy Shattuck.

Erik Ibarra was taping the scuffle on his video recorder. Shattuck threatened to shoot him. Erik placed the video camera on

3

the bed and was told by Shattuck that they were all under arrest. The camera and the video recorder were confiscated and everyone was taken outside the residence. Erik and Sean report that they were tripped, and then tightly handcuffed after they fell to the ground. They both claim to have complained to the officers about their treatment and were told to shut up.

Sean and Erik were transported to Harris County Jail where they were charged with Evading Detention and Resisting Arrest. The criminal charges against the Ibarras were subsequently dismissed. The camera was returned broken and the film was destroyed. The video recorder was returned without the memory stick.

Sean and his brother Erik Ibarra brought this lawsuit against Harris County, Sheriff Thomas, and the deputies in December 2003 in state court, alleging violation of 42 U.S.C. § 1983 and numerous state law claims. The Ibarras later amended their complaint to add law enforcement expert witness, Albert Rodriguez, and Assistant District Attorney, Sally Ring. The defendants removed the case to federal court and filed separate motions for summary judgment. In March 2005, the district court denied the summary judgment motions of Harris County, Sheriff Thomas, Foose, Shattuck, Moreno, Rocha, and Palermo. In April 2005, the district court denied the summary judgment motions of Ring and Rodriguez. The defendants timely appealed.[2]

---

[2] We lack jurisdiction over Harris County's appeal because municipal governments do not enjoy the same right to interlocutory

4

II.

A.

In reviewing an interlocutory appeal from the denial of qualified immunity, this court does not apply the typical summary judgment standard. See Kinney v. Weaver, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). Rather, we consider de novo "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." Id. at 349. Our jurisdiction is limited to issues of law. See Flores v. City of Palacios, 381 F.3d 391, 393 (5th Cir. 2004) (citation omitted). The presence of a genuine issue of material fact regarding qualified immunity will preclude us from exercising jurisdiction. Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).

The district court found that the facts of this case, taken in the light most favorable to the plaintiffs, do not demonstrate that the defendant officers had probable cause to arrest the Ibarras. The district court also found that the defendant officers acted in accordance with an unconstitutional policy set by County Sheriff Thomas. The district court therefore denied qualified immunity as to all of the defendants. On appeal, the defendants assert that

appeal as their officials. See Gentry v. Lowndes County, 337 F.3d 481, 484 (5th Cir. 2003) (citing McKee v. Rockwall, 877 F.2d 409, 412 (5th Cir. 1989)). The County's appeal is therefore dismissed.

On October 12, 2006, this court granted the Ibarras' unopposed motion to dismiss Defendant Ring from this appeal.

the Ibarras failed to allege that the officers' actions violated their constitutional rights. They further argue that they are entitled to statutory immunity under Texas law.

1.

"Government officials performing discretionary functions are entitled to qualified immunity from civil liability to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Longoria v. Texas, 473 F.3d 586, 592 (5th Cir. 2006)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity analysis is a two-step process. First, we determine whether the plaintiff properly alleged the violation of a clearly established right. Michalik v. Hermann, 422 F.3d 252, 257 (5th Cir. 2005). "A right is clearly established if its contours are 'sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" Id. at 238 (quoting Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000)). If the plaintiff can meet that burden, we then consider whether the official's conduct was objectively reasonable under the law at the time of the incident. Id. (citing Sanchez v. Swyden, 139 F.3d 464, 467 (5th Cir. 1998)).

Sean Ibarra claims that his First and Fourth Amendment rights were violated when Deputy Foose attempted to detain him for taking photographs of the scene at 2911 Shady Park Drive, and then arrested him for failing to comply with Foose's order to stop. The

6

law is clearly established that a detention is objectively unreasonable if the police officers lacks reasonable suspicion to believe that the person is engaged in criminal activity, <u>Brown v. Texas</u>, 443 U.S. 47, 51 (1979), and that a warrantless arrest is objectively unreasonable if the officer lacks probable cause. <u>United States v. Watson</u>, 423 U.S. 411, 417-424 (1976). Here Sean has alleged that Foose attempted to detain him without reasonable suspicion and arrested him without probable cause. Sean has therefore satisfied the first prong of the qualified immunity analysis by alleging a violation of his clearly established Fourth Amendment rights.

We therefore consider whether Foose's actions were objectively reasonable. Both parties agree that taking photographs of police activity is not, in and of itself, a criminal act. Deputy Foose argues that he had reasonable suspicion to detain Sean Ibarra because he feared that Sean planned to use the photos to retaliate against the officers.[3] At summary judgment, Foose offered no evidence to support his belief that Sean planned to use these photographs to engage in this criminal activity in the future, other than the bare fact that Sean was taking photographs of the scene.[4] Foose has pointed to no other facts in the summary

---

[3] Under § 36.06 of the Texas Penal Code, a person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another on account of that person's status as a public servant.

[4] The one case Foose cites in support is distinguishable. In

7

judgment record that would support a reasonable officer's belief that Sean Ibarra was engaged in criminal activity.[5] Viewed in the light most favorable to the Ibarras, Deputy Foose unreasonably violated Sean Ibarra's clearly established Fourth Amendment rights by attempting to detain him without reasonable suspicion.[6] The

United States v. Raibley, 243 F.3d 1069 (7th Cir. 2001), the suspect was observed surreptitiously videotaping a young woman who worked at Walmart as she walked across the parking lot. Id. at 1071. When the man realized he had been observed, he drove away from the scene "in a hurry." Id. The man later returned to the Walmart and then sped away again, apparently after seeing a marked patrol vehicle parked in front of the store. Id. The Seventh Circuit found that the police officer who stopped Raibley had reasonable suspicion to believe that he was engaged in the criminal offense of stalking, id. at 1074-75, which under Illinois law requires a showing that the defendant placed another person under surveillance on at least two separate occasions and placed that person in reasonable apprehension of bodily harm, sexual assault, confinement, or restraint. Id. at 1074.

In contrast to Raibley, Sean Ibarra was openly taking pictures from his front lawn -- and attempted to retreat to his house only after Foose started toward him. Furthermore, there was no evidence other than the fact that Sean was taking photographs that would have indicated that Sean planned to use them to engage in retaliation.

[5] Foose further argues that he had probable cause to arrest Sean because Sean failed to obey the order to stop and fled. The law is clearly established that disregarding an unlawful police order does not create reasonable suspicion or probable cause. Brown, 443 U.S. at 51-52; Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000). Because Foose is unable to demonstrate based on the summary judgment record that his attempt to detain Sean was lawful, he cannot show that Sean's subsequent arrest was supported by probable cause.

[6] Because the record before us indicates a violation of Sean Ibarra's Fourth Amendment rights, we need not reach the question of whether his First Amendment rights were violated to resolve this interlocutory appeal. If necessary, this question may be addressed in a subsequent appeal after the evidence as to both claims is developed at trial.

district court's denial of qualified immunity with respect to Deputy Foose is therefore affirmed.[7]

2.

We find, however, that the district court erred in not considering each deputy's individual role in the arrest when determining whether he was eligible for qualified immunity. See Longoria v. Texas, 473 F.3d at 593 (holding that the "court erred in using these factual disputes as a blanket justification for denial of summary judgment to the defendants as a class, without further considering their individual roles in the disputed incidents."); Collins v. Ainsworth, 382 F.3d 529, 540-41 (5th Cir. 2004). We therefore address each officer's argument in turn.

Deputy Shattuck claims that he is entitled to qualified immunity because he acted reasonably in assisting Foose with the Ibarras' arrest. There is a disputed question of fact as to how much Shattuck saw of the interaction between Foose and the Ibarras. In his incident report, Shattuck claimed to have witnessed the entire sequence of events. He has since claimed that he never saw Sean Ibarra taking photographs, and only came out of 2911 Shady Park Drive in time to see Foose pursuing a fleeing suspect. The Ibarras maintain that Shattuck was present for the entire incident.

_____

[7] Our determination here is based solely on our reading of the record under the summary judgment standard for purposes of determining qualified immunity, and is in no way preclusive of a contrary finding by the jury with respect to the ultimate merits of the constitutional claim.

This factual dispute precludes summary judgment on qualified immunity, because the extent of Shattuck's knowledge as to events leading up to the arrest will affect the determination whether his actions with respect to the Ibarras were objectively reasonable. We therefore dismiss Shattuck's interlocutory appeal for lack jurisdiction.

None of the remaining officer defendants were aware of the events leading up to the arrest, and on the record before us they are entitled to qualified immunity for their participation.[8] Moreno responded to a request from other deputies for assistance and watched Sean and Erik Ibarra outside after they had been arrested. Palermo also responded to the other deputies' call for assistance. He entered the Ibarra residence, saw Sean struggling with Deputy Foose, escorted Sean out of the house, and forced Sean to the ground to handcuff him because he was noncompliant. Like Moreno, Palermo did not know why the Ibarras had been arrested and his response upon arriving on the scene was not unreasonable. He is therefore entitled to immunity. Deputy Palermo is also entitled to qualified immunity as to the excessive force claim because the

---

[8] Because none of the remaining officers were aware of the events leading up to the arrest, they cannot be held liable as bystanders. A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). None of the remaining defendants knew why the Ibarras were being arrested or had a reasonable opportunity to intervene. Moreno, Palermo, and Rocha are entitled to qualified immunity on the Ibarras' bystander liability claims.

10

Ibarras offer no argument or evidence to support their claim that Palermo's use of force against Sean was unreasonable under the circumstances.

Sergeant Rocha was inside the residence at 2911 Shady Park when he heard a deputy outside shouting that an officer needed assistance. He ran over to 2907 Shady Park, where he saw Madalyn Valdez attacking Foose. Rocha grabbed Valdez by the arm and handcuffed her. Rocha did not help with the apprehension or arrest of Sean Ibarra or Erik Ibarra, and did not touch them, speak to them, or transport them to the Harris County Jail. He had no knowledge of the events giving rise to the arrests. He did not act unreasonably, given the circumstances, and therefore is entitled to qualified immunity based on his personal participation in the arrest.

The Ibarras also argue that Sergeant Rocha is liable as a policymaker and because he ratified the actions of the deputies involved. Rocha cannot be liable as a supervisor because the acts of his subordinates do not trigger § 1983 liability. Alton v. Texas A & M Univ., 168 F.3d 196, 200 (5th Cir. 1999). Moreover, Rocha is not an "authorized policymaker in whom final authority rested regarding the action ordered." Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 289 (5th Cir. 2002). The Ibarras make several conclusory allegations that Rocha ratified Foose's actions, but offer no evidence in support. This argument is therefore abandoned. Rocha is entitled to qualified immunity.

11

3.

As a supervisory official, Sheriff Thomas may not be held liable under § 1983 for the acts of his subordinates based on a theory of respondeat superior. See Alton, 168 F.3d at 200. Sheriff Thomas may, however, be held personally liable if either (1) he was personally involved in the constitutional deprivation; or (2) a sufficient causal connection exists between his wrongful conduct and the constitutional violation. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987). As chief law enforcement policymaker in Harris County, Sheriff Thomas may be held personally liable if he implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving

force of the constitutional violation," <u>Cozzo</u>, 279 F.3d at 289.[9]

The district court determined that Sheriff Thomas maintained and acquiesced in an unconstitutional policy permitting officers to effectuate the warrantless seizure of cameras and video recorders and to destroy the film therein.  The court noted that Thomas stated in his deposition that he approved of Foose's actions in this case and that Foose had acted in accordance with the department's word of mouth or standard operating procedures.  The court further noted that Sergeant Petruska testified about a previous incident that the deputies had handled the same way, and that the testimony of Petruska, Shattuck, and Rocha indicates that

---

[9]    An official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of that municipality or to an official to whom that body had delegated policy-making authority.

<u>Johnson v. Moore</u>, 958 F.2d 92, 94 (5th Cir. 1992).

13

Foose acted in accordance with procedures deemed appropriate.[10] The court concluded that there was no factual dispute about the existence or character of the procedures under which the plaintiffs were incarcerated -- and that Sheriff Thomas's acquiescence in this practice showed deliberate indifference to the plaintiffs' constitutional rights.

Although we agree with the district court that viewed in the light most favorable to the Ibarras the evidence indicates that Sheriff Thomas acquiesced in an unconstitutional policy, we disagree with the district court's conclusion that no factual disputes exist as to existence and scope of a custom or policy, and as to Thomas's knowledge of this policy. On appeal, Sheriff Thomas specifically challenges the district court's finding that any such unofficial custom or policy exists and argues that the Ibarras have produced insufficient evidence showing a pattern of constitutional violation under official County regulations. Because Sheriff Thomas primarily argues that evidence in the record is insufficient to support the Ibarras' version of the facts, the resolution of his qualified immunity claim turns on a contested question of fact. We therefore dismiss Sheriff Thomas's appeal for lack of jurisdiction. See Connelly v. Texas Dept. of Criminal Justice, 484 F.3d 343, 345-46 (5th Cir. 2007) (citing Kinney v. Weaver, 367 F.3d 337, 347 (5th Cir. 2004) (en banc)).

---

[10] He explained: "We took the film. Took the camera, took the film, gave them their camera back."

B.

Each of the officers also claims immunity from suit for the state-law claims under the Texas Tort Claims Act because the Ibarras made an irrevocable election to sue only the County. They rely upon § 101.106(a) of the Texas Civil Practice and Remedies Code, which states that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Because the Ibarras sued the County, the Defendants argue, their lawsuits against the individual officers are barred.

The defendants misread the statute. Subsection (b) of § 101.106 states the converse of subsection (a): suing an employee constitutes an irrevocable election and bars suit against the governmental unit. Subsection (e) states that if both the employees and the governmental unit are sued "the employees shall immediately be dismissed on the filing of a motion by the governmental unit."

In this case, both Harris County and its employees were sued; therefore, subsection (e) controls. Harris County has never filed a motion to dismiss its employees; therefore, the defendant officers have no automatic right to dismissal. Subsection (e) does not explicitly prohibit suits against both employee and governmental unit. See Newman v. Obersteller, 960 S.W.2d 621, 622

15

(Tex. 1997) (judgment for school district rendered employee immune under § 101.106).  Harris County's presence in this case does not entitle the individual officers to immunity from the state-law claims.[11]  Because Harris County failed to file the appropriate motion, the district court did not err in denying summary judgment on basis of statutory immunity under the Texas Tort Claims Act.[12]

C.

In its one-page order of April 27, 2005, the district court summarily denied Rodriguez's motion for summary judgment. Rodriguez appealed, arguing that the district court erred in denying him absolute immunity as an expert witness. We agree. See Mowbray v. Cameron County, 274 F.3d 269, 277 (5th Cir. 2001) (citing Briscoe v. LaHue, 460 U.S. 325, 103 S. Ct. 1108 (1983)). See also Kinney v. Weaver, 367 F.3d 337, 352 (5th Cir. 2004) (en banc) ("[N]o distinction between fact witnesses and expert witnesses ... [is] drawn in cases involving the absolute immunity that protects witnesses from civil liability arising from their testimony.").  The Ibarras argue that Rodriguez was not sued because he was an expert witness, but because he conspired with others to commit perjury.  This argument fails, however, because as

_____

[11] Appellants Thomas, Shattuck, Rocha, Moreno, and Palermo incorporate this argument in their briefs.

[12] The appellants offer no other arguments in support of their claim for qualified immunity as to the Ibarras' state law claims.

16

Rodriguez correctly notes, immunity also covers allegations of conspiracy to commit perjury. <u>Mowbray</u>, 274 F.3d at 277-78 ("absolute witness immunity bars § 1983 suits for conspiracy to commit perjury"). Rodriguez is entitled to absolute immunity.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court denying qualified immunity on the federal claims with respect to Foose. The appeals of Shattuck and Thomas are DISMISSED for lack of jurisdiction. We AFFIRM the judgment of the district court denying immunity under the Texas Torts Claims Act to Foose, Shattuck, Thomas, Moreno, Palermo, and Rocha and we REVERSE the district court's judgment denying qualified immunity on the federal claims to Moreno, Palermo, Rocha, and Rodriguez.

AFFIRMED in part; REVERSED in part; and DISMISSED in part.