Marco **TRISTAN** and Martha Tristan, Individually and as Next Friends of E.A.T., a Minor, Plaintiffs,

v.

**SOCORRO INDEPENDENT SCHOOL DISTRICT, Clarice Jones, and Robert Brito, Jr., Defendants.**

No. EP–11–CA–298–FM.

United States District Court, W.D. Texas, El Paso Division.

Sept. 24, 2012.

Rodney W. Baxter, Hardie & Baxter, El Paso, TX, for Plaintiffs.

Henry C. Hosford, Baskind & Hosford, P.C., Kurt G. Paxson, Angelica Astrid Saenz, Mounce Green Myers Safi, Paxson & Galatzan, PC, El Paso, TX, for Defendants.

## ORDER GRANTING IN PART AND DE-NYING IN PART ROBERT BRITO JR.'S MOTION TO DISMISS

FRANK MONTALVO, District Judge.

On this date, the court considered Robert Brito Jr.'s ("Brito") "Defendant Robert

Brito, Jr.'s Motion to Dismiss and Alternative Motion for Judgment on the Pleadings," ("Motion to Dismiss") [ECF No. 11], filed September 20, 2011; Plaintiffs Marco Tristan and Martha Tristan's ( collectively "the Tristans") "Plaintiffs' Response to Motions Filed by Defendants Clarice Jones and Defendant Robert Brito, Jr." ("Response") [ECF No. 16], filed October 11, 2011, and "Defendant Robert Brito, Jr.'s Reply to Plaintiffs' Response to Brito's Motion to Dismiss and Alternative Motion for Judgment on the Pleadings" ("Reply") [ECF No. 17], filed October 12, 2011. For the reasons set forth below, the court will grant in part and deny in part Brito's Motion.

## I. BACKGROUND

### A. Procedural History

The Tristans filed suit in state court on July 18, 2011, bringing a variety of claims against defendants Brito, Clarice Jones ("Jones"), and Socorro Independent School District ("SISD"). The defendants collectively removed the case to this court, and Brito filed his Motion to Dismiss on September 20, 2011. On October 10, 2011, the Tristans filed their "Plaintiffs' Amended Complaint" ("Complaint") [ECF No. 15]. Therein, the Tristans assert state law claims against defendants for assault, breach of fiduciary duty, negligent hiring and supervision, and negligence; claims under Title 42, United States Code, Section 1983 ("1983") for alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution; claims for violation of Title 20, United States Code, Section 1400 et seq, the Individuals with Disabilities Act ("IDEA"); and claims under Title 29, United States Code, Section 794 of the Rehabilitation Act

("Section 504"). The Tristans bring claims against Brito in both his individual and official capacity. Brito subsequently requested that the court consider his Motion to Dismiss as addressing the Tristans' newly amended Complaint.[1]

### B. Facts Alleged[2]

Plaintiffs are the next friends and guardians of E.A.T., a minor. E.A.T. attended Salvador H. Sanchez Middle School ("Sanchez Middle School"), a public school which is part of the SISD. At all relevant times, Jones was the principal of the school and Brito was a teacher employed by SISD. Prior to the events at issue, E.A.T. was in a car accident and suffered a traumatic brain injury which left him physically and mentally impaired. Months passed before E.A.T. was able to return to school. The Tristans attended several Admission Review and Dismissal (ARD) Committee meetings, where educators, medical personnel, and other professionals met to determine E.A.T's eligibility for special education services at SISD. At these meetings, the committee discussed E.A.T's physical condition, including his brain injury and multiple skull fractures he had suffered. The ARD committee also determined that E.A.T. did not have behavior problems which would require implementation of a Behavior Modification Plan or Modification Assertive Discipline Form. At the conclusion of the ARD committee assessment, E.A.T. was placed in a Special Education Unit at Sanchez Middle School. Brito taught English to E.A.T. within the Special Education Unit. When E.A.T. was placed in Brito's class, the Tristans were not informed that Brito had only a provisional license to teach in the Special Education Unit. At some point af-

---

1. See Reply, at 1–2.

2. For the purposes of this Motion, the court takes all well pled facts as true. See United

States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 266 (5th Cir.2010).

ter E.A.T. joined Brito's class, Brito lost this provisional certification after he failed the special education certification exam for the third time. Although school administrators were aware that Brito no longer had the required certification, they did not remove Brito from the classroom and did not inform the Tristans. Teaching assistants also subsequently reported concerns about Brito's discipline methods which included "making E.A.T. kneel for extended periods of time, yelling at E.A.T., shaking E.A.T., and allowing other students to hit E.A.T." [3] School administrators took no action in response to these reports. On April 2, 2010, an incident occurred where Brito "grabbed E.A.T. by the back of the neck and forcefully slammed E.A.T's head" onto a desk.[4] Soon after this incident, Brito was removed from his teaching position at SISD. He later pled guilty to the criminal offense of causing injury to a child.

The Tristans allege that E.A.T. suffered, and continues to suffer, mental and physical injuries as a result of Brito's conduct, and that of Jones and SISD.

### C. Parties' Arguments

Brito raises three arguments in support of his Motion to Dismiss the claims against him. First, he contends that the state tort claims for assault, negligence, and breach of fiduciary duty, as well as claims under the Texas Constitution must be dismissed because the Tristans have brought the same claims against SISD. Brito maintains that the Texas Civil Practice and Reme-

dies Code requires the court to dismiss these claims upon SISD's motion to dismiss its employees from the suit. Second, Brito argues that the Section 504 and IDEA claims against him must be dismissed because there is no individual liability under these acts, and claims against him in his official capacity are duplicative of the claims against SISD. Finally, Brito asserts that the Tristans' Section 1983 claims seek remedies available under the IDEA, and thus must be dismissed because the Tristans failed to exhaust IDEA administrative procedures.

The Tristans do not substantively respond to Brito's arguments regarding their state tort and state constitutional claims, nor do they challenge his assertion that there is no individual liability under Section 504 or the IDEA. The Tristans do dispute Brito's challenge to their 1983 claims. Particularly, they argue that exhaustion is not required in circumstances where—as is the case here—the damages all stem from a single act of violence by a teacher.

### II. APPLICABLE LAW [5]

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." [6] However, "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." [7]

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that

3. Compl., at 3.

4. *Id.*

5. Brito seeks dismissal under Rule 12(b)(6), and alternately moves for a judgment on the pleadings under Rule 12(c). Here, the distinction is irrelevant as "[a] motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to

dismiss under Rule 12(b)(6)." *Doe v. MySpace Inc.,* 528 F.3d 413, 418 (5th Cir.2008) (citation omitted).

6. Fed.R.Civ.P. 12(b)(6).

7. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (citation omitted).

is plausible on its face." [8] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." [9] The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." [10] In reviewing a complaint, a court must "accept all well-pleaded factual allegations as true, and . . . interpret the complaint in the light most favorable to the plaintiff," [11] resolving all doubts on the plaintiff's behalf.[12] However, the court need not "accept as true a legal conclusion couched as a factual allegation." [13]

## III. DISCUSSION

### A. State Common Law and Texas Constitutional Claims

■ Brito contends the Texas constitutional claims and the assault, negligence, and breach of fiduciary duty claims are barred by statute, and must be dismissed. The court disagrees.

Brito bases his argument on Section 101.106 ("Section 101.106") of the Texas Civil Practices and Remedies Code, which provides that:

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

[ . . . ]

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.[14]

At first glance, Brito's argument for dismissal under Section 101. 106 appears meritorious. The Tristans do not dispute that their common law and state constitutional claims against Brito are based on the same subject matter as the claims against SISD. Further, it is undisputed that SISD is a "governmental unit" and Brito is an "employee" of a governmental unit as those terms are defined in the statute.[15]

However, because the Tristans filed suit against both SISD and Brito, it is subsection (e) of Section 101.106, rather than subsection (a), that governs.[16] Subsection (e) specifies that employees shall be dismissed *on the filing of a motion by the governmental unit.*[17] Brito asserts that SISD has filed such a motion. He cites to a joint motion by SISD and Jones filed in state court before the case was removed.[18]

8. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

9. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

10. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

11. *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 266 (5th Cir.2010).

12. *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir.2009).

13. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

14. Tex. Civ. Prac. & Rem.Code Ann. § 101.106(a), (e).

15. *See id.* at § 101.001(2), (3).

16. *See Hernandez v. City of Lubbock,* 253 S.W.3d 750, 753–57 (Tex. App–Amarillo 2007); *see also Ibarra v. Harris County Texas,* 243 Fed.Appx. 830, 837 (5th Cir.2007); *Kinnison v. City of San Antonio,* 2009 WL 578525 (W.D.Tex. Mar. 5, 2009).

17. Tex. Civ. Prac. & Rem.Code Ann. § 101.106(e) (emphasis added).

18. *See* Mot. to Dismiss, at 5 (citing Doc. 1, pp. 29, 31–33).

However, in that motion SISD makes clear that it is only seeking to dismiss Jones.[19] Brito does not address this issue, nor provide any authority for the proposition that a motion to dismiss one employee under Section 101. 106 requires the dismissal of *all* employees. Accordingly, unless and until SISD moves to dismiss Brito, he is not entitled to dismissal of these claims pursuant to Section 101.106.

## B. IDEA and Section 504 Claims

Brito next contends that the Tristans cannot maintain claims against him for alleged violations of the IDEA and Section 504 because there is no individual liability under these Acts. The Tristans do not address this argument.

■ The IDEA requires states to provide a "free appropriate public education" to children with disabilities.[20] Section 504 prohibits schools or other entities receiving federal funds from discriminating against individuals with disabilities.[21] Neither the IDEA nor Section 504, however, provides a cause of action against a school official sued in his individual capacity.[22] Accord-

ingly, the court will dismiss the Tristans' IDEA and Section 504 claims against Brito in his individual capacity.

■ Brito argues that the IDEA and Section 504 claims against him in his official capacity should also be dismissed, because such claims are duplicative of the Tristans' claims against SISD. When a plaintiff sues a government employee in his official capacity and also sues the city, "[t]he official-capacity claims and the claims against the governmental entity essentially merge."[23] In such situation, the Supreme Court instructs that:

> As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.[24]

---

19. *See* ECF No. 1 at 29–34.

20. *White v. Ascension Parish Sch. Bd.,* 343 F.3d 373, 378 (5th Cir.2003) (quoting 20 U.S.C. § 1412(a)(1)).

21. *D.A. v. Houston Indep. Sch. Dist.,* 629 F.3d 450, 453 (5th Cir.2010) (citing 29 U.S.C. § 794(a)).

22. *See D.A. v. Houston Independent School Dist.,* 716 F.Supp.2d 603, 611 (S.D.Tex.2009) ("It is well-established that these statutes are meant to prevent discrimination by public agencies, not officials acting in their individual capacities.") (citing *Lollar v. Baker,* 196 F.3d 603, 609 (5th Cir.1999); *Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F.3d 98, 107 (2d Cir.2001); *and Bradley v. Arkansas Dep't of Education,* 301 F.3d 952, 957, n. 5 (8th Cir.2002)); *see also Hooker v. Dallas Indep. Sch. Dist.,* 2011 WL 832169, *2–3 n. 6, 2011 U.S. Dist. LEXIS 21249, *8–9, n. 6 (N.D.Tex. Mar. 3, 2011); *A.A. v. Houston In-*

*dep. Sch. Dist.,* 2011 WL 181356, *1–2, 2011 U.S. Dist. LEXIS 5080, *4–5 (S.D.Tex. Jan. 19, 2011).

23. *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 485 (5th Cir.2000).

24. *Kentucky. v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (U.S.1985) (internal citations omitted) (emphasis in original); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (U.S.1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Drabek v. Larson,* 7 F.3d 229 (5th Cir.1993) (concluding that where the plaintiff brought EEO claims against both the city and a city director in his official capacity "the City is the only true defendant to [plaintiff's] suit").

Thus, the Tristans' claims against Brito in his official capacity are in reality claims against SISD. Because the Tristans have already sued SISD for their IDEA and Section 504 claims, the claims against Brito in his official capacity will be dismissed as duplicative.[25]

### C. Constitutional Claims Brought Pursuant to Section 42 U.S.C. 1983

Finally, Brito contends that the Tristans' 1983 claims seek relief available under the IDEA, and thus, should be dismissed because the Tristans failed to exhaust their statutory remedies.[26] The Tristans do not dispute they failed to exhaust their IDEA remedies, but argue that exhaustion should not be required under the circumstances of this case. Accordingly, the court must first determine whether the 1983 claims are subject to the IDEA exhaustion requirement, and, if so, whether the Tristans have established that they should be excused from this requirement.

### 1. The 1983 Claims Are Not Subject to the IDEA Exhaustion Requirement

■ The Tristans' 1983 claims are not subject to exhaustion because they arise from an incident unrelated to the provision of educational services, and seek relief for non-educational injuries which cannot be remedied through the IDEA.

■ The IDEA guarantees children with disabilities a free appropriate public education ("FAPE").[27] In addition to requiring federally funded schools to provide needed services to disabled students, the IDEA also requires that schools establish administrative procedures to provide parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."[28] Parties are required to exhaust these procedures before bringing such complaints in state or federal court.[29] Crucially, this exhaustion requirement ap-

---

25. *J.D. v. Georgetown Indep. Sch. Dist.*, 2011 WL 2971284, *3–4, 2011 U.S. Dist. LEXIS 79335, *9–10 (W.D.Tex. July 21, 2011) (citations omitted) (dismissing Section 504 claims brought against school board president in his official capacity as redundant of suit against school board); *see also A.A. v. Houston Indep. Sch. Dist.*, 2011 WL 2182417, 2011 U.S. Dist. LEXIS 59907 (S.D.Tex. May 12, 2011) (citation omitted) (finding that where school district has also been sued, IDEA claims brought against principal in her official capacity "serve[ ] no purpose whatsoever"); *Kerry M. v. Manhattan Sch. Dist. #114*, 2004 WL 2538303 at *5 (N.D.Ill. Sept. 28, 2004) (dismissing IDEA claims against school official when school district also sued because "[a]ny IDEA obligations that [defendant school official] might hold in her official capacity as Special Education Director are derivative of her employer['s] IDEA obligations as a special education cooperative").

26. Brito argues that IDEA and Section 504 claims against him must also be dismissed because the Tristans failed to exhaust their administrative remedies. Having already determined that those claims must be dismissed, the court need only addresses Brito's exhaustion arguments regarding the 1983 claims.

27. *See* 20 U.S.C. § 1400(d).

28. 20 U.S.C. § 1415(b)(6).

29. 20 U.S.C. § 1415(i). The Fifth Circuit has not determined whether the IDEA exhaustion requirement implicates a court's jurisdiction, but, in considering the issue, cited to the Supreme Court's warning "that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory . . . should not be given the jurisdictional brand." *M.L. v. Frisco Indep. Sch. Dist.*, 451 Fed.Appx. 424, 427 (5th Cir.2011) (internal quotation marks omitted) (quoting *Henderson ex rel. Henderson v. Shinseki*, — U.S. —, 131 S.Ct. 1197, 1202–03, 179 L.Ed.2d 159 (2011) (citations omitted)).

plies not only to IDEA claims, but also to any other claims which "seek relief that is also available under [the IDEA]."[30] The purpose of the exhaustion requirement is "to ensure that parties resolve all educational issues underlying their claims."[31]

■ Courts have struggled to determine when claims not brought under the IDEA require exhaustion.[32] In assessing whether non-IDEA claims seek relief available under the IDEA, courts have interpreted "'available' to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers."[33] This analysis focuses "on the source and nature of the alleged injuries for which [the plaintiff] seeks a remedy."[34]

The Tristans contend that their 1983 claims are based on a single incident— Brito's alleged assault of E.A.T. on April 2, 2010.[35] The Complaint alleges that defendants "violated the Constitutional right of E.A.T. to be free from invasion of his personal security by use of excessive force and discipline."[36] The Tristans further allege that defendants "impeded and hindered the course of justice with the intent to deny E.A.T. equal protection of the laws."[37] They do not allege that E.A.T. was denied any educational rights or opportunities, nor do they plead for recovery for any educational injuries.[38]

Brito argues that the section 1983 claims fall under the IDEA because they allege excessive discipline in a special education classroom. He supports this argument by

---

**30.** 20 U.S.C. § 1415(*l*).

**31.** *Frisco Indep. Sch. Dist.*, 451 Fed.Appx. at 428 (internal quotation marks omitted) (quoting *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1169 (9th Cir.2007)).

**32.** *See Deshotel v. W. Baton Rouge Parish Sch. Bd.*, 2011 WL 10657345, 2011 U.S. Dist. LEXIS 125969 (M.D.La. Oct. 27, 2011) (commenting that "the Court has not been able to find any clear jurisprudence and guidance from the Fifth Circuit which sets forth specific factors to assist the Court in making its decision on whether exhaustion under the IDEA is required under the facts of this case"); *see also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 874 (9th Cir.2011) (discussing cases from the First, Third, Sixth, Seventh, Tenth and Eleventh Circuits and noting that "these courts have not articulated a comprehensive standard for determining when exactly the exhaustion requirement applies.") (citations omitted).

**33.** *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & County of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir.2000) (*citing Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 812 (10th Cir.1989)).

**34.** *Id.*

**35.** The Tristans assert that exhaustion should not apply because:

Plaintiffs have pled that the single act complained of occurred whereby the minor suffered serious bodily injury at a teachers hand. Pursuit of some administrative hearing to voice their complaint about the conduct of the teacher/principal/school would be like trying to put the genie back into the bottle. Obviously, the damage had been done and BRITO had been removed from his teaching position. If E.A.T. had remained under BRITO's tutelage after the facts surrounding the incident came to light, or if BRITO had remained at the school or in a position to continue his acting out, then Plaintiffs could understand the basis of Defendants' arguments.

Resp., at 6 (citing Compl. at ¶¶ 15–17, 19, and 20).

**36.** Compl., at 4.

**37.** Compl., at 5.

**38.** The Tristans do allege generally that their lawsuit "arises under" the IDEA, along with various Constitutional provisions and state and federal laws. *See* Compl., at 1. Despite this language, the court cannot discern from the face of the complaint any cause of action based on the IDEA. In addition, the Tristans would not be able to assert a claim for an IDEA violation under Section 1983. *See D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 456–57 (5th Cir.2010).

citing to cases where courts held that complaints regarding in-class discipline were subject to IDEA exhaustion. None of these cases are controlling in this circuit, however, and many are distinguishable from this case. For example, Brito cites to *Hayes Through Hayes v. Unified Sch. Dist. No. 377*, where the Tenth Circuit found that "the discipline of a child in the classroom, including short-term suspensions and 'time-out' periods, is a matter that relates to the public education of a handicapped child and that therefore falls within the scope of the [IDEA]." [39] However, at least one other Circuit has declined to extend the holding in *Hayes* as requiring IDEA exhaustion for "beatings [that] go far beyond what the *Hayes* court envisioned when it spoke of 'time-out rooms' and 'discipline.'" [40] Likewise, the court finds the discipline in *Hayes* distinguish-

able from Brito's alleged conduct, which was so unacceptable that he was subsequently removed from his position and pled guilty to a criminal offense.[41] Moreover, it is not clear from the Complaint that Brito's alleged assault was intended as discipline. While the Tristans allege that "Brito's conduct was apparently a form of discipline," [42] they simultaneously state that "[i]n the event the described conduct of Brito is not considered a form of discipline, said conduct resulted in physical contact with E.A.T. that each Defendant knew or should have known that [sic] it would be regarded as offensive and provocative." [43] Based on the facts alleged, the assault by Brito cannot be related to any attempted educational program. Thus, this case is clearly distinguishable from *Hayes* and other cases where discipline is conceived of as part of a child's education.[44]

39. 877 F.2d 809, 813 (10th Cir.1989).

40. *Campbell v. NYE County Sch. Dist.*, 68 F.3d 480 (9th Cir.1995); *see also S.S., ex rel. Stutts v. E. Kentucky Univ.*, 307 F.Supp.2d 853, 858 (E.D.Ky.2004) *vacated and remanded on other grounds S.S. v. E. Kentucky Univ.*, 125 Fed.Appx. 644 (6th Cir.2005) (collecting cases) (distinguishing complaints about "the general disciplinary practices of a school," which fall under the IDEA, from "allegations of physical assault or sexual abuse of a student by a school staff member or administrator [which] fall outside of the scope of the IDEA since they are not related to the way that a school provides education").

41. *See* Compl., at 3 (citing Tex. Penal Code Ann. § 22.04).

42. Compl., at 4.

43. *Id.*

44. *Hayes*, 877 F.2d at 813 (10th Cir.1989) (discussing "the close relationship between the use of discipline and in-class instruction in providing a child with a free appropriate public education [and concluding that] We believe that proper conduct and education are inextricably intertwined.") (internal quotation marks and citation omitted). Brito also cites to *Moore v. Harriman City Schools*,

a case where the challenged discipline was the student's suspension from school, which is similarly distinguishable from this case. 16 F.3d 1220 (6th Cir.1994). The case most closely analogous to this case, and which Brito relies on the most heavily, is *Franklin v. Frid*, 7 F.Supp.2d 920 (W.D.Mich.1998). In *Franklin*, the court found that claims regarding verbal and physical abuse and humiliation of a disabled student fell within the IDEA. *Id.* at 925. The court based its ruling, however, on a finding that the plaintiffs' 1983 claims were "steeped in allegations referring to the IDEA itself and to Defendants' compliance or noncompliance with their obligation to provide a free and appropriate public education, the touchstone of the IDEA." *Id.* In contrast, the Tristans' 1983 claims do not allege the denial of any educational rights. While the Tristans do reference IDEA services in the Complaint, the point of these references appears to be to establish that as a disabled student, E.A.T. was particularly vulnerable to Brito's alleged assault, and to show that defendants had prior knowledge of this vulnerability. *See* Compl., at 2–3. Moreover, even the *Franklin* court acknowledged that "as a broad proposition, a disabled child who asserts a constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative

■ Having determined that the 1983 claims do not assert violations of any educational rights, the court declines to conclude that simply because E.A.T. is disabled, any injury he suffers in school is automatically subject to the IDEA.[45] Congress enacted the IDEA "to ensure that the rights of children with disabilities and parents of such children are protected."[46] Consequently, it would be absurd to interpret the statute as placing restrictions on a disabled student seeking redress for constitutional torts, when such restrictions would not apply if the same claims were brought by his non-disabled classmates.[47]

The Fifth Circuit has also rejected the notion that the IDEA encompasses all torts occurring in the special education classroom. In *Morris v. Dearborne,* parents of a disabled child brought state tort and Section 1983 claims after a teacher allegedly used a facilitative communication device to manipulate their child into making false abuse allegations.[48] The parents also claimed the teacher's actions violated

the IDEA, alleging that the school was required to give them prior notice before using the communication device. The Court dismissed the IDEA claims, explaining:

> The IDEA mandates a free public education for each child and sets forth procedures designed to ensure an education that meets minimal requirements. The use of [the communication device] does not give rise to a cause of action in this case because of some potential impact this unique technology had on [the child's] education. Rather, Plaintiffs' damages arose from the fraudulent use of the [device] to manufacture false allegations of sexual abuse against [the child's] parents. No one has pointed to, and we are unable to discern, any provision in the IDEA that provides substantive or procedural protection against such atrocity. The Plaintiffs' remedy, upon proving their claims, lies elsewhere.[49]

---

45. *See Payne v. Peninsula Sch. Dist.,* 653 F.3d 863, 876 (9th Cir.2011) ("The exhaustion requirement is intended to prevent courts from acting as ersatz school administrators and making what should be expert determinations about the best way to educate disabled students. At the same time, it is not intended to temporarily shield school officials from all liability for conduct that violates constitutional and statutory rights that exist *independent* of the IDEA and entitles a plaintiff to relief *different* from what is available under the IDEA.") (emphasis in original); *see also Deshotel,* 2011 WL 10657345 at *4-5, 2011 U.S. Dist. LEXIS 125969 at *14 ("The Court agrees with plaintiffs' assertion that the IDEA addresses specific educational rights of disabled children, and is not meant to be a catch-all for any and every dispute which might arise between an IDEA-covered child and a school and school officials.").

46. 20 U.S.C. § 1400(d)(1)(B).

47. *See Payne,* 653 F.3d at 878–79 (noting that an overly broad reading of the exhaustion requirement "would actually place disabled students in a disadvantaged position relative to students without special needs"); *see also Deshotel,* 2011 WL 10657345, 2011 U.S. Dist. LEXIS 125969 (M.D.La. Oct. 27, 2011) ("Any child not covered by the IDEA, who was allegedly treated in the same or a similar manner as [the disabled plaintiff student], would be allowed to assert these claims without having to first exhaust remedies under the IDEA. A student who also happens to have claims under the IDEA should not be deprived of the rights non-IDEA students have.")

48. 181 F.3d 657, 674 (5th Cir.1999)

49. *Morris v. Dearborne,* 181 F.3d 657, 674 (5th Cir.1999) (internal citations omitted).

remedies under the IDEA before filing suit under § 1983. For example, a disabled child who is sexually abused or severely beaten by a teacher or school official—acts having no relationship to the appropriate education of a disabled child—would not come within the purview of the IDEA." *Franklin,* 7 F.Supp.2d at 925 (citations omitted).

Likewise, the IDEA provides no protection against assault by a teacher, nor does it provide a remedy for the mental and physical injuries E.A.T. allegedly suffered. The Tristans seek, among other things, punitive damages and reimbursement for E.A.T.'s substantial medical expenses. These damages are not available under the IDEA, which generally provides "only prospective educational remedies."[50]

In sum, the court finds that the Tristans' 1983 claims do not seek relief under the IDEA and thus, are not subject to the exhaustion requirement.

### 2. The Tristans Have Sufficiently Alleged That Exhaustion of Their 1983 Claims Would Have Been Futile

■ Because the IDEA does not provide a remedy for the Tristans' 1983 claims, exhaustion of IDEA remedies would have been futile. "[P]arents may bypass the administrative process where exhaustion would be futile or inadequate."[51] To establish futility, a plaintiff "must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."[52]

The Tristans allege that "[b]ecause the injuries sustained by E.A.T. were concluded when done and because BRITO was permanently removed from his teaching position by JONES and SISD, Plaintiffs did not have any recourse by seeking administrative solutions, and exhausting administrative remedies under the circumstances would have been useless."[53]

The Tristans have thus shown that exhaustion would be futile because "the condition creating the damage ha[d] ceased"[54] with Brito's removal from the classroom. Moreover, as explained *supra*, IDEA remedies cannot adequately address the physical and mental injuries caused by the alleged assault.[55] Accordingly, exhaustion is not required for these claims.[56]

---

**50.** *Deshotel*, 2011 WL 10657345 at *4, 2011 U.S. Dist. LEXIS 125969 *13; *see also Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (1st Cir.2006) (commenting, that "[i]t is black letter law that punitive damages-indeed money damages of any sort-are not available in a private suit under the IDEA," unless necessary to reimburse parents for expenses incurred to provide educational services the school should have provided.); *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 527–28 (4th Cir.1998) (collecting cases) (internal citations omitted) (explaining that the IDEA does not provide punitive or compensatory damages to redress tort-like injuries); *P.R. v. Cent. Tex. Autism Ctr., Inc.*, 2009 WL 1393291, 2009 U.S. Dist. LEXIS 43303 (W.D.Tex. May 15, 2009) ("There is no provision in the IDEA which addresses non-educational tort-based allegations.").

**51.** *Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (citation omitted).

**52.** *M.L. v. Frisco Indep. Sch. Dist.*, 451 Fed. Appx. 424, 428 (5th Cir.2011) (internal quotation marks omitted) (quoting *Coleman v. New-*

*burgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir.2007)).

**53.** Compl., at 4.

**54.** *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 918 (6th Cir.2000) (citation omitted).

**55.** *See Taylor v. United States Treasury Dep't, IRS*, 127 F.3d 470, 477 (5th Cir.1997) (noting that "[t]raditional circumstances in which courts have excused a claimant's failure to exhaust administrative remedies include situations in which ... the unexhausted administrative remedy would be plainly inadequate") (citation omitted).

**56.** *See McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 569 (7th Cir.2004) (holding that student who suffered permanent injury after teacher forced him to perform activity that violated his IEP was not required to exhaust under the IDEA because "[t]he nature of his claim is not educational; no change to his IEP could remedy, even in part, the damage done to [the plaintiff's] body").

## IV. *CONCLUSION*

Accordingly, the court enters the following Orders:

1. "Defendant Robert Brito, Jr.'s Motion to Dismiss and Alternative Motion for Judgment on the Pleadings," [ECF No. 11] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. **DENIED** as to the Texas common law and Texas Constitutional Claims against Brito.

   b. **GRANTED** as to the IDEA and Section 504 claims against Brito.

   c. **DENIED** as to the Section 1983 claims against Brito.

**SO ORDERED.**